IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 04-CV-02547-WYD-BNB

CHARLES JASON NAUERT,

    Plaintiff,

v.

ACE PROPERTY AND CASUALTY INSURANCE COMPANY;
ESIS, INC., a Pennsylvania Corporation,

    Defendants.

_____

**ORDER**
_____

THIS MATTER is before the Court on Defendants' Amended Consolidated Motion to Dismiss Plaintiff's Claims for Relief and to Strike Portions of Plaintiff's Complaint ("Motion to Dismiss"), filed January 18, 2005, and Plaintiff's Response, filed February 7, 2005.  For the reasons set forth below the Court GRANTS Defendants' Motion to Dismiss as to Plaintiff's first claim alleging insurance bad faith and his second claim alleging violations of the Colorado Consumer Protection Act.  The Court DENIES as moot Defendants' Motion to Dismiss to the extent it requests certain allegations of the Complaint be stricken as immaterial, impertinent and scandalous.

I.    BACKGROUND

Plaintiff brings this action as a compensation claimant under the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. § 901 *et seq.* (1988) ("LHWCA"), and seeks to recover compensatory and punitive damages against Defendants Ace Property

and Casualty Company ("ACE") and ESIS, Inc. (collectively "ACE")[1] arising out of Defendants' alleged bad faith handling of Nauert's federal workers' compensation claim. Pursuant to allegations in his complaint, Plaintiff sustained a work-related injury to his ankle and foot on December 13, 2003 while working at an American military base in Kosovo when he stepped on a large rock.  Compl., at ¶ 2.  He states he filed a prompt report and was returned to Colorado on January 1, 2004 for medical treatment.  *Id.*, ¶ 5. Plaintiff avers ACE has at all relevant times contracted to provide workers' compensation coverage for Plaintiff under the LHWCA.  Plaintiff also claims that despite verification by ACE's doctors that he was disabled by an on-the-job-injury, ACE denied Plaintiff's claim was work-related, and refused to pay him disability payments or for his medical care.  *Id.*, at ¶ 8.  Nauert alleges Defendants' conduct caused him financial hardship, loss of enjoyment of life, and impairment of psychological and physical function.  *Id.*, at ¶ 5.

Plaintiff filed suit on October 29, 2004, asserting an insurance bad faith claim and a claim that ACE violated the Colorado Consumer Protection Act, C.R.S. § 6-1-101, *et seq.*, by violating the Colorado Unfair Claims – Deceptive Practices Act, C.R.S. §10-3-1104(1).  Defendants' Motion to Dismiss, filed Pursuant to Fed. R. Civ. P. 12(b)(1), 12(b)(6), 12(f) and 12(g), asserts Plaintiff's complaint must be dismissed because his first claim is preempted by the LHWCA, and Plaintiff lacks standing to assert his second claim under the Colorado Consumer Protection Act.  In the alternative, Defendants

---

[1] Defendant ESIS, Inc., ("ESIS") is wholly owned and controlled by ACE and serves as a third-party adjuster on ACE/CIGNA claims.

request portions of Plaintiff's complaint be stricken as immaterial, impertinent and scandalous. I address the parties' arguments below.

II.   LEGAL ANALYSIS

   A.   Introduction

When a party moves to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1), the attack can be either a facial attack to the allegations or a factual attack. *Osborn v. United States*, 918 F.2d 724, 729 n.6 (10th Cir. 1990). A facial attack on the complaint's allegations as to subject matter jurisdiction questions the sufficiency of the complaint. *Holt v. U.S.*, 46 F.3d 1000, 1002 (10th Cir. 1995) (citing *Ohio Nat'l Life Ins. Co. v. United States,* 922 F.2d 320, 325 (6th Cir.1990)). In reviewing a facial attack on the complaint, a district court must accept the allegations in the complaint as true. *Id.* Here, I find Defendants' Motion to Dismiss raises a facial attack, as this Court need not look beyond the allegations contained in the complaint. *Holt*, 46 F.3d at 1002. Accordingly, I find Defendants' 12(b)(1) motion to dismiss does not need to be converted into a Rule 12(b)(6) motion or a Rule 56 summary judgment motion. *Id.*

When evaluating a motion to dismiss pursuant to FED. R. CIV. P. 12(b)(6), the court "'must accept all the well-pleaded allegations of the complaint as true and construe them in the light most favorable to the plaintiff.'" *David v. City and County of Denver*, 101 F.3d 1344, 1352 (10th Cir. 1996) (quoting *Gagan v. Norton*, 35 F.3d 1473, 1474 n. 1 (10th Cir. 1994)). "A complaint may be dismissed pursuant to FED. R. CIV. P 12(b)(6) only 'if the plaintiff can prove no set of facts to support a claim for relief.'" *Id.* (quoting *Jojola v. Chavez,* 54 F.3d 488, 490 (10th Cir. 1995)). Pursuant to the Federal

Rules, if a court considers matters outside of the pleadings, a motion to dismiss pursuant to Rule 12(b)(6) should be treated as a motion for summary judgment. Here, Defendants attached numerous documents to their Motion to Dismiss, including a complaint and order in a related case. Similarly, Plaintiff referenced and attached to his response, ACE and ESIS website materials and affidavits from other lawyers. In ruling upon Defendants' Motion to Dismiss, I do not consider these outside matters submitted by the parties and, therefore, I do not find it necessary to treat their motion as one for summary judgment under Fed. R. Civ. P. 12(b).

      B.     <u>Preemption by the Defense Base Act and the LHWCA</u>

I first address Defendants' argument that this court lacks subject matter jurisdiction to hear Plaintiff's insurance bad faith claim because it is preempted by the Defense Base Act ("DBA") and the LHWCA. Defendants argue this claim falls under the LHWCA because, as Plaintiff admits, the alleged injury occurred while Plaintiff was employed as a security guard at an American military base in Kosovo. Defendants further claim that because Plaintiff alleges injury at an overseas United States military base, his claim arises first under the DBA, 42 U.S.C. §§ 1651-54, which expressly incorporates the LHWCA as follows:

> The DBA provides, "[e]xcept as herein modified, the provisions of the [LHWCA] . . . shall apply in respect to injury or death of any employee engaged in any employment – at any military, air, or naval base acquired after January 1, 1940, by the United States from any foreign government; or upon any lands occupied or used by the United States for military or naval purposes in any Territory or possession outside the continental United States.
> 42 U.S.C. § 1651(a)(1) - (2).

Accordingly, Defendants assert exclusivity provisions within the DBA[2] and the LHWCA[3] preempt all state law claims against the "employer or insurer for damages arising out of a delay in payment or a failure to pay worker's compensation benefits." Mot., at 6.

Plaintiff, on the other hand, argues the LHWCA's "straight-forward" exclusivity provision neither expressly preempts state law, nor presents an actual conflict with similar state workers' compensation regulations. Pl.'s Resp., at 3. Plaintiff further contends this Court should apply Colorado common law in determining whether ACE acted in bad faith when adjusting Nauert's claim, because the majority of facts occurred in Colorado, including his hiring, medical treatment, claims adjustment, and this lawsuit. Plaintiff avers that under Colorado common law, exclusivity provisions like the one found in the LHWCA, do not apply to bad faith claims adjusting where the injury and the damages claimed were not sustained within the scope of employment.[4] Accordingly, Plaintiff contends ACE's liability does not stem from his work-related injury, but arises

---

[2](c) <u>Liability as exclusive</u>. "The liability of an employer . . . under this chapter shall be exclusive and in place of all other liability of such employer, . . . coming within the purview of this chapter under the workmen's compensation law of any State, Territory, or other jurisdiction, irrespective of the place where the contract of hire of any such employee may have been made or entered into." 42 U.S.C. §1651(c).

[3](a) <u>Employer liability; failure of employer to secure payment of compensation</u>. "The liability of an employer prescribed in § 904 of this title shall be exclusive and in place of all other liability of such employer to the employee, . . . except that if an employer fails to secure payment of compensation as required by this chapter, an injured employee, . . . may elect to claim compensation under the chapter, or to maintain an action at law or in admiralty for damages on account of such injury or death." 33 U.S.C. § 905(a)

[4]To support his claim that bad faith is a separate tort from those barred by workers' compensation exclusivity, Plaintiff cites to *Travelers Ins. Co. v. Savio*, 706 P.2d 1258 (Colo. 1985), but erroneously quotes language that does not appear in that case. *See* Pl.'s Resp., at 4 (Plaintiff quotes the following language: "occurred after the compensable injury and the damages claimed were not sustained within the scope of employment.").

from injuries caused by ACE outside the workplace and after employment ceased when ACE intentionally refused to pay for Plaintiff's medical treatment. Pl.'s Resp., at 4. Lastly, Plaintiff argues that even under the DBA and LHWCA, an insurance carrier who engages in bad faith claims adjusting can be held accountable in tort. *Martin v. Travelers Insurance Co.*, 497 F.2d 329 (1st Cir. 1974) (insurance company may be sued in tort for "misdeeds committed in connection with payment of compensation under the [LHWCA]").

Upon my review of the parties' arguments and of pertinent federal circuit law, I find the LHWCA preempts state law regarding actions for bad faith handling of LHWCA claims. Responding to Plaintiff's argument that there is no express federal preemptive decree, I find the plain language of the DBA provides otherwise. 42 U.S.C. § 1651(c) ("[t]he liability of an employer . . . shall be exclusive and in place of all other liability of such employer, . . . coming within the purview of this chapter under the workmen's compensation law of any State").[5] Plaintiff's claim that Colorado common law should apply because Nauert was hired in Colorado also runs counter to language within the same DBA provision, which plainly states, an employer's liability is exclusive "irrespective of the place where the contract of hire of any such employee may have been made or entered into." *Id.*

Moreover, I find the legislative history of the LHWCA and the DBA makes clear

---

[5]Plaintiff does not appear to deny Defendants' assertion that the DBA exclusivity clause governs in this case. *See generally, Kalama Services, Inc. v. Director, Office of Workers' Compensation*, 354 F.3d 1085, 1090 (9th Cir. 2004) (noting the purpose of the DBA in extending LHWCA coverage, is to provide worker's compensation coverage for employees working outside the continental United States).

Congress' intent to preempt state law. The LHWCA was established in 1927, "as a uniform national program of workers compensation benefits for longshore and harbor workers which could not be constitutionally provided by the States." *Texas Employers' Ins. Ass'n v. Jackson*, 820 F.2d 1406, 1411-1412 (5th Cir. 1987). The later established DBA, together with the LHWCA, provide a certain fixed recovery for employees injured on the job without regard to the employer's fault, but also "precludes the assertion of various common-law defenses that had frequently resulted in the denial of any recovery for disabled laborers." *Potomac Elec. Power Co. v. Director, Office of Workers' Compensation Programs, U. S. Dept. of Labor*, 449 U.S. 268, 281 (1980). Given this framework and the exclusivity language of the LHWCA, I find Congress intended to preempt potentially conflicting state law so as to preserve its apparent objective of providing "uniform protection" to employees injured on the job.[6] See *Atkinson v. Gates, McDonald & Co.*, 665 F.Supp. 516, 520 (S.D. Miss. 1987).

I next address the issue of whether Plaintiff's bad faith claim lies within the purview of the LHWCA. Plaintiff avers an insurance company can be sued in tort under the LHWCA because the LHWCA's penalty provisions do not represent the exclusive remedy for bad faith adjusting. Pl.'s Resp., at 4-5. I disagree. The LHWCA by its terms contemplates nonpayment or delay in payment of benefits and provides claimants a remedy for such nonpayment in the form of a penalty. Section 914(f) of the LHWCA, for example, provides for broad penalties against employers who delay in making

---

[6]Accordingly, I find Plaintiff's reliance upon Colorado case law for the proposition that the LHWCA should not bar bad faith claims in this action is inappropriate. *See Travelers Ins. Co. v. Savio*, 706 P.2d 1258, 1264 (Colo. 1985) (holding the Colorado Worker's Compensation Act did not bar a common law claim for bad faith).

payments, so that if compensation, payable under the terms of an award, is not paid within ten days, a twenty (20) percent penalty is added to the amount of compensation due.  33 U.S.C. § 914(f) (1988).  The LHWCA also allows a successful claimant an award of attorney's fees and expenses.  *Id.*, § 928.  Most significantly, in 1984 Congress amended the LHWCA at 33 U.S.C. § 931 to enhance the criminal penalties for arbitrary withholdings from a misdemeanor to a felony, increasing the maximum fine to $10,000 and the maximum imprisonment to five years.  *Barnard v. Zapata Haynie Corp.*, 975 F.2d 919, 921 (1st Cir. 1992).  As other Circuit Courts have acknowledged, I find the LHWCA's comprehensive remedial framework for nonpayment or delay in payment of benefits and the "conflict therewith which necessarily flows from any state penalty scheme respecting failure to pay LHWCA benefits which differs from the scheme of the LHWCA," convinces me that Plaintiff's state law claims are preempted.  *Barnard*, 975 F.2d at 921 (citing *Atkinson v. Gates, McDonald & Co.*, 838 F.2d 808, 812 (5th Cir. 1988)).

The court in *Atkinson* further reasoned that the statutory penalty "inferentially, but nonetheless plainly, also provides that the penalty shall not be *any* different amount, and that liability for it shall not vary according to anything, such as good or bad faith...".  *Atkinson,* 838 F.2d at 812; *see also Hall v. C & P Tel. Co.,* 809 F.2d 924 (D.C.Cir.1987) (finding state tort claim based on employer's intentional refusal to make timely compensation payments preempted by exclusivity and late payment provisions of LHWCA); *Sample v. Johnson,* 771 F.2d 1335, 1347 (9th Cir.1985) (holding state wrongful refusal to pay claim barred by exclusivity and penalty provisions of LHWCA, *cert. denied,* 475 U.S. 1019, 106 S.Ct. 1206, 89 L.Ed.2d 319 (1986)); *Daley v. Aetna*

8

*Casualty & Sur. Co.,* 61 Ohio App.3d 721, 573 N.E.2d 1128, 1130 (1988) (intent to preempt state actions for bad faith and intentional infliction of emotional distress based on employer's termination of benefits "is apparent both from the pervasiveness of the federal regulation and the likelihood of conflicts between state and federal law.").

As for Plaintiff's claim *Martin v. Travelers Insurance Company*, 497 F.2d 329 (1st Cir. 1974), "rejected the argument that the LHWCA's penalty provisions are the exclusive remedy for bad faith adjusting," I find the cases are distinguishable. Pl.'s Resp., at 5. The *Martin* court made clear,

> "the crux of the complaint here is the insurer's callous stopping of payment without warning when it should have realized that acute harm might follow. A stop payment on a sizable compensation check which may have been deposited and drawn upon carries the obvious possibility of embarrassment and distress."

*Martin*, 497 F.2d at 331.

Unlike *Martin*, the facts in the case at bar relate solely to ACE's refusal to pay benefits. Despite Plaintiff's best efforts to convince the Court this case is similar to *Martin* because ACE's alleged conduct was "egregious" and because ACE "completely fabricated" its claim that Plaintiff's injuries were not work related, I find Defendants' actions, in the end, amount to nothing more than a refusal to make payments. Pl.'s Resp., at 6. Under such facts, I find *Martin* is not applicable and the LHWCA is Plaintiff's exclusive remedy against ACE. As Defendants aptly point out, other federal and circuit courts addressing the same issue have rejected *Martin*, or limited its holding to its unique facts. Indeed, even the First Circuit distinguished its 1974 holding, stating "we find *Martin* to be inapposite to the facts alleged here," which relate solely to a refusal to pay benefits. *Barnard*, 975 F.2d at 920-21. The court in *Atkinson* and *Sample* made similar findings. *See Atkinson*, 838 F.2d at 813 (limiting *Martin* to "a

9

situation where the plaintiff's recovery would not depend on a determination that he was owed compensation under the LHWCA or that the defendant violated the LHWCA"); *Sample*, 771 F.2d at 1347 (distinguishing *Martin* from cases involving the "ordinary refusal to pay" and limiting decision to "where a carrier deliberately stops payments already made, when it should have known that acute harm might follow").

For all of the foregoing reasons, I find Plaintiff's first claim alleging insurance bad faith is preempted by the LHWCA and should be dismissed pursuant to Fed. R. Civ. P. 12(b)(1).

    C.    <u>Standing to Assert a Claim Pursuant to the Colorado Consumer Protection Act</u>

In his second claim for relief, Nauert states ACE "committed deceptive trade practices" entitling Plaintiff to relief under the Colorado Consumer Protection Act ("CCPA"), C.R.S. § 6-1-101, *et seq.*, by violating the following provisions of the Colorado Unfair Claims – Deceptive Practices Act ("UCDPA") set forth in C.R.S. § 10-3-1104(1)(h):

> (II). Failing to acknowledge and act reasonably, promptly upon communications with respect to claims arising under insurance policies;
>
> (VI). Not attempting in good faith to effectuate prompt, fair, and equitable settlements of claims in which liability has become reasonably clear;
>
> (VII). Compelling insureds to institute litigation to recover amounts due under insurance policy by offering substantially less than the amounts ultimately recovered in the actions brought by the insured; or ...
>
> (XIV). Failing to promptly provide a reasonable explanation of the basis in the insurance policy in relation to the facts and applicable law for denial of the claim....
>
> Compl., at 5.

Defendants assert these allegations fail to state a claim under the CCPA because they fail to allege that ACE engaged in a deceptive trade practice as enumerated in the CCPA, and fail to allege that the conduct had a significant public impact, as required by Colorado case law.  Thus, Defendants contest the first and third elements of the test for CCPA applicability as set forth in *Hall v. Walter,* 969 P.2d 224, 235 (Colo.1998) ("[t]o prove a private cause of action under the CCPA, a plaintiff must show: (1) that the defendant engaged in an unfair or deceptive trade practice; (2) that the challenged practice occurred in the course of defendant's business, vocation, or occupation; (3) the challenged practice significantly impacts the public as actual or potential consumers of the defendant's goods, services, or property; (4) that the plaintiff suffered injury in fact to a legally protected interest; and (5) that the challenged practice caused the plaintiff's injury).

The *Hall* court stated the first step in proving a CCPA claim "requires the plaintiff to establish conduct by the defendant that constitutes a deceptive trade practice."  *Hall,* 969 P.2d at 224, 234.  The Colorado supreme court specifically referenced § 6-1-105 as "identifying and defining deceptive trade practices." *Id.* at 234.  Here, I find Plaintiff's conclusory statement, ACE "committed deceptive trade practices" because he violated provisions of the UCDPA does not meet this burden, as none of the UCDPA provisions which were allegedly violated by Defendants appears in § 6-1-105.  I further find no language in the CCPA providing that a UCDPA violation constitutes a *per se* violation of the CCPA.  *See Coors v. Security Life of Denver Insurance Company*, 91 P.3d 393, 401 (Colo. App. 2003).  Moreover, Plaintiff does not inform the Court, even after he was given the opportunity to do so in his opposition to Plaintiff's Motion, how the UCDPA

11

violations might implicate or resemble any of the deceptive trade practices identified in § 6-1-105. Instead, Plaintiff merely copies the language contained in claim two of his complaint into his response and avers he "has gone to great lengths to satisfy the four-part test spelled out in *Coors v. Security Life of Denver Ins.*, Co., 91 P.3d 393, 398 (Colo. App. 2003) and *Rhino Linigns USA, Inc. v. Rocky Mountain Rhino Lining, Inc.*, 62 P.3d 142 (Colo. 2003) . . . ".[7]  Resp., at 8.  Lastly, to the extent Plaintiff relies upon *Showpiece Homes Corp. v. Assurance Co. of America*, 38 P.3d 47, 52 (Colo. 2001), to support his contention he may look outside § 6-1-105 for a deceptive trade practice, I find such argument is without merit. *See Coors,* 91 P.3d at 401 (finding *"Showpiece Homes* did not hold that other conduct not enumerated in § 6-1-105 may constitute a deceptive trade practice under the CCPA").

In addition to showing defendant engaged in an unfair or deceptive trade practice identified in § 6-1-105, Plaintiff must also satisfy the third *Hall* element by demonstrating ACE's alleged conduct "significantly impacts the public as actual or potential consumers of the defendant's goods, services, or property." *Hall,* 969 P.2d at 235. The Colorado supreme court outlined the relevant considerations to determine whether a challenged practice significantly impacts the public within the context of a CCPA claim. These considerations include (1) the number of consumers directly affected by the challenged practice, (2) the relative sophistication and bargaining power of the consumers affected by the challenged practice, and (3) evidence that the challenged practice has previously impacted other consumers or has the significant potential to do so in the future.

---

[7]Although Plaintiff asserts the test enunciated in *Coors* and *Rhino Linings* only has four parts, I find it is the same five-part test stated by the *Hall* court, which requires a showing by the Plaintiff that "the defendant engaged in an unfair or deceptive trade practice." *See Coors,* 91 P.3d at 398; *Rhino Linigns USA, Inc.*, 62 P.3d at 146-47.

*Martinez v. Lewis,* 969 P.2d 213, 222 (Colo. 1998).

Here, even assuming *arguendo* Nauert could demonstrate ACE, his employer and the purchaser of the insurance, was a relatively unsophisticated consumer to the transaction, I find Nauert does not allege a significant impact upon the public from the alleged deceptive practices. Rather, the only alleged impact is on Nauert, who claims ACE wrongfully denied his claim on the basis it was not work-related. Pl.'s Compl., at 3. As such, I find the alleged wrong is private in nature and does not affect the public. *See Rhino Linigns USA, Inc. v. Rocky Mountain Rhino Lining, Inc.*, 62 P.3d 142 (Colo. 2003) ("'the [CCPA] is intended to reach practices of the type which affect consumers generally and is not available as an additional remedy to redress a purely private wrong.'") (internal citation omitted).

As to Plaintiff's assertion he has "buttressed the allegation of his complaint" by submitting portions of the ACE and ESIS websites and various affidavits, attached as Exhibits A through F to Plaintiff's response, I find I do not need to consider such exhibits, as they do not demonstrate the required significant public impact. At most, the affidavits of other lawyers who have been involved with lawsuits involving ACE would only demonstrate there are other instances where ACE has denied claims. As set forth in *Rhino Linings*, and *Coors, supra*, such evidence does not demonstrate a significant public impact required to establish a CCPA claim. *See Rhino Linings USA, Inc.*, 62 P.3d at 150 (no record to justify a finding of significant public impact where three of some 550 dealers were potentially affected by the alleged practice); *Coors,* 91 P.3d at 399 (overcharging on insurance premiums to 200 of 20,000 customers did not rise to the level of broad public impact).

13

Lastly, I find Plaintiff's reliance upon *Showpiece Homes* for the proposition that a claimant under the CCPA need not make a showing of public impact, is misplaced. *Coors* makes clear "the holding in *Showpiece Homes* is limited to the conclusion that insurance companies and insurance transactions will be covered by the CCPA if the requirements of *Hall* are met." *Coors,* 91 P.3d at 401.

Having found Plaintiff's second claim fails to establish two necessary elements for a private cause of action under the CCPA, I find this claim should be dismissed for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6)

III.   CONCLUSION

For the foregoing reasons, it is

ORDERED that Defendants' Amended Consolidated Motion to Dismiss Plaintiff's Claims for Relief and to Strike Portions of Plaintiff's Complaint, filed January 18, 2005, is **GRANTED IN PART AND DENIED IN PART**. It is GRANTED to the extent it requests Plaintiff's first and second claims for relief be dismissed and DENIED AS MOOT to the extent it requests certain allegations in Plaintiff's Complaint be stricken. It is

FURTHER ORDERED this case is dismissed.

Dated:  August 27, 2005

BY THE COURT:

s/ Wiley Y. Daniel
Wiley Y. Daniel
U. S. District Judge